1  Daniel G. Shay (SBN 250548)
   DanielShay@TCPAFDCPA.com
2  **LAW OFFICE OF DANIEL G. SHAY**
3  2221 Camino Del Rio South, Ste 308
   San Diego, CA  92108
4  Telephone: (619) 222-7429
   Facsimile:  (866) 431-3292
5

6  *Attorney for Plaintiff*

7

8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

12 CAROL A. WOODARD, Individually        )   CASE NO.
   and On Behalf of All Others Similarly )
13 Situated,                             )   CLASS ACTION COMPLAINT FOR
                                         )   DAMAGES
14                                       )
15              Plaintiff,               )
                                         )   1.  VIOLATIONS OF INFORMATION
16                                       )   PRACTICES ACT, CAL. CIV. CODE
   vs.                                   )   1798.80, ET SEQ.
17                                       )
18                                       )   2.  VIOLATIONS OF CALIFORNIA'S
                                         )   FALSE ADVERTISING LAW, BUS. &
19 FIRST AMERICAN FINANCIAL             )   PROF. CODE 17500, ET SEQ.
   CORPORATION and FIRST                 )
20 AMERICAN TITLE COMPANY,              )
                                         )   3.  VIOLATION OF CALIFORNIA'S
21              Defendant.               )   UNFAIR COMPETITION LAW, BUS.
                                         )   & PROF. CODE 17200, ET SEQ.
22                                       )
23                                       )   4.  BREACH OF CONTRACT
                                         )
24                                       )   5.  NEGLIGENCE
25                                       )
                                         )   JURY TRIAL DEMANDED
26                                       )
                                         )
27 _____)
28

                                    1
   **Class Action Complaint for Damages**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### INTRODUCTION

1.  Carol Woodard ("Plaintiff") brings this action for damages and any other available legal or equitable remedies, resulting from the illegal actions of Defendants First American Financial Corporation and First American Title Company (Collectively "First American" or "Defendants") and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or related entities, in negligently, and/or willfully violating numerous laws. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### JURISDICTION AND VENUE

2.  Subject matter Jurisdiction is proper under the Class Action Fairness Act 28 U.S.C. § 1332(d) because this action has an amount in controversy of over $5 million, involving over 100 proposed class members, some of whom are from a different state than Defendants.

3.  This Court may exercise personal jurisdiction over Defendants because they are registered to do business and have their principal places of business in California.

4.  Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 because Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, and because Defendants' contacts with this District are sufficient to subject them to personal jurisdiction.  Venue is also proper in this District under 28 U.S.C. § 1391(b) because Defendants transact business here and because Plaintiff has resided in this District at all times relevant to these claims such that a substantial part of the events giving rise to Plaintiff's causes of action against Defendants occurred within this judicial district.

**Class Action Complaint for Damages**

## PARTIES

5.   Plaintiff is, and at all times mentioned herein was, an individual citizen and resident of the State of California, County of San Luis Obispo, in this judicial district.

6.   Plaintiff is informed and believes, and thereon alleges, that Defendant First American Financial Corporation, and at all times mentioned herein was, incorporated in the State of Delaware, with a principal place of business and headquarters located within this District in the City of Santa Ana, State of California.

7.   Plaintiff is informed and believes, and thereon alleges, that Defendant First American Title Corporation is a California Corporation with its principal place of business in Santa Ana, California.

## GENERAL FACTUAL ALLEGATIONS

8.   Plaintiff incorporates by reference all of the above paragraphs of this complaint as if fully stated herein.

9.   Upon information and belief, First American is the largest title insurance company in the United States with an estimated $5.3 billion per year in revenue derived from title insurance and other real estate closing services.

10.   In carrying out its business, First American often emails a Uniform Resource Locator ("URL")[1] to customers so they can access their records, which First American maintains online.

---

[1] A Uniform Resource Locator, colloquially termed a web address, is a reference to a web resource that specifies its location within the internet and a mechanism for retrieving it. For example, "https://www.pacer.gov/" is a URL.

**Class Action Complaint for Damages**

11.   Upon information and belief, records within these URL links include wire transactions with bank account numbers, account statements, imaged drivers licenses, and even internal corporate documents relating to small businesses.

12.   To alleviate consumers' concerns about sharing PII with First American, First American advertises its services as "being, secure, reliable, and affordable records storage solutions" and it claims to provide "a complete document management program aimed at mitigating risk."[2]

13.   First American also advertises that one of the benefits of using its services over others is that it provides, "Secure access to files"[3] and that it is "Committed to Safeguarding Customer Information."[4]

14.   Although First American touts itself as being an electronically secure service provider, First American allowed a serious and easily detectable hole within its online security for approximately the last 16 years. Consequently, more than 885 million confidential documents were accessible to any individual that knew any URL produced since approximately 2003.

15.   For example, if a customer was sent a URL containing the number 000000076 within the URL, by changing the six to a seven an individual would be able to view the next document for which a URL was created.

16.   Similarly, if a consumer modified the six to a five, an individual would be able to see the document that First America created a link for before this individual.

---

[2] https://www.firstam.com/mortgagesolutions/solutions/cleanfile-solutions/document-management.html

[3] https://www.firstam.com/mortgagesolutions/solutions/foreclosure-reo/asset-closing-services.html

[4] http://web.archive.org/web/20190525235150/https://www.firstam.com/privacy-policy/index.htm

**Class Action Complaint for Damages**

17. So long as an individual has the initial URL for any document created since 2003, that individual would have the power to look at each and every of the 885 million documents made within approximately the last 16 years.

18. To make matters worse, First American does not destroy sensitive documents after its services end, but instead stores information "indefinitely, including the period after which any customer relationship has ceased."[5] Therefore, an individual in 2019 could steal a customer's PII from First American relating to services it provided back in 2003.

19. First American's actions contradict and violate its written assurances to customers that it, "will maintain appropriate … systems to protect against unauthorized access to … the data we maintain."[6]

20. Such assurances led reasonable consumers to believe that the PII First American collected from them would stay private.

21. Due to the elementary nature of URLs, even a novice attacker could obtain PII from First American.[7]

22. Equally elementary is the ability to detect and remedy this weak spot in First American's security system. As one commentator noted, "even the most elementary PEN test" would have found this data exposure."[8] A PEN test, also called a penetration test, involves hiring a cybersecurity expert to look for and try to exploit vulnerabilities in the company's privacy and security configurations.

---

[5] *Id.*

[6] *Id.*

[7] https://krebsonsecurity.com/2019/05/first-american-financial-corp-leaked-hundreds-of-millions-of-title-insurance-records/.

[8] https://krebsonsecurity.com/2019/05/first-american-financial-corp-leaked-hundreds-of-millions-of-title-insurance-records/comment-page-1/#comments

**Class Action Complaint for Damages**

23. Other commentators have opined that a routine "application security test" would have exposed this vulnerability.[9]

24. First American's disregard over several years for even the most fundamental of cyber security measures not only has rendered consumers' PII accessible to the general public, but demonstrates that First American misrepresented its services as being secure.

25. Plaintiff in the years of 2018 and 2019 purchased and sold residential properties in conjunction with Defendants.

26. Plaintiff's most recent purchase of a residential property occurred in February of 2019 with an estimated closing date of March 1, 2019.

27. In the process of purchasing properties, Plaintiff utilized First American as the title company, and in the process of utilizing First American's services Plaintiff provided First American with her personally identifiable information or ("PII").

28. Upon information and belief, Plaintiff's PII was made publicly accessible on the internet due to First American's negligent use of URLs.

29. Plaintiff relied upon First American's representations that it would maintain Plaintiff's information securely, and reasonably expected that First American would take reasonable measures to ensure data security of sensitive information.

30. To ensure that that PII about California residents is protected, the California legislature enacted California Civil Code § 1798.81.5. The creation of this bill provided Plaintiff, and all other persons similarly situated within the United States, a right to keep their personal information maintained by First American confidential.

31. Under this title, businesses, including First American, are required to implement and maintain reasonable security procedures and practices appropriate to the

---

[9] *Id.*

**Class Action Complaint for Damages**

nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure. Cal. Civ. Code § 1798.81.5.

32. First American has neglected its duty to do so and has allowed any individual to access its customers' PPI, including, but not limited to, bank account numbers, Social Security numbers, financial and tax records, and images of drivers' licenses.

33. Since 2003 First American's cyber security has been substantially deficient, resulting in a clear violation of Cal. Civ. Code § 1798.81.5, among other laws.

34. Despite this clear failure of security of private information, First American repeatedly advertised itself as a secure entity that maintained physical, electronic, and procedural safeguards for consumers' PPI it possessed.

35. As of the filing of this complaint, First American has not provided Plaintiff with any notice of the existence of the data breach.

## CHOICE OF LAW

36. The State of California has sufficient interest in the conduct at issue in this complaint, such that California law may be uniformly applied to the claims of the proposed Class.

37. First American does substantial business in California, as its headquarters is located in Santa Ana, California, and a significant portion of the proposed Nationwide Class and Subclass are located in California. Moreover, First American avails itself to California citizens by soliciting directly to them.

38. In addition, the conduct that forms the basis for each and every Class and Subclass member's claims against First American emanated from First American's headquarters in Santa Ana, California, where—among other things—First American stored customer information in its data center; First American set its privacy and compliance policies and practices; and First American planned their communications with Class and Subclass members.

**Class Action Complaint for Damages**

39. The State of California also has the greatest interest in applying its law to Class and Subclass members' claims. California's governmental interests include not only compensating resident consumers under its consumer protection laws, but also what the State has characterized as a "compelling" interest in using its laws to regulate a resident corporation and preserve a business climate free of unfair and deceptive practices. *Diamond Multimedia Sys. v. Sup. Ct.*, 19 Cal. 4th 1036, 1064 (1999). Moreover, the State has expressly demonstrated an interest in protecting California consumers' personal information, as well as encouraging California business to provide reasonable security to protect consumer information. *See* Cal. Civ. Code § 1798.81.5(a)(1).

40. If other states' laws were applied to Class and Subclass members' claims, California's interest in discouraging resident corporations from engaging in the sort of unfair and deceptive practices alleged in this complaint would be significantly impaired. California could not effectively regulate a company like First American, which does business throughout the United States, if it can only ensure remuneration for consumers from one of the 50 states affected by conduct that runs afoul of its laws.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action on behalf of herself individually and on behalf of all others similarly situated, pursuant to Federal Rule Civil Procedure 23(b)(1), (b)(2) and/or (b)(3).

42. The putative Class ("the Class") that Plaintiff seeks to represent is composed of:

> All persons within the United States who utilized First American's services relating to a real estate transaction whose account First American made available with one or more document URL links since January 1, 2003 to the present.

**Class Action Complaint for Damages**

43. The putative Subclass ("the Subclass") that Plaintiff seeks to represent is composed of:

> All persons within California who utilized First American's services relating to a real estate transaction whose account First American made available with one or more document URL links since January 1, 2003 to the present.

44. Excluded from the Class and Subclass are any of Defendants' officers, directors, employees, affiliates, legal representatives, attorneys, heirs, and assigns, and any entity in which Defendants have a controlling interest. Judicial officers presiding over this case, its staff, and immediate family members, are also excluded from the Class.

45. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. While the exact number of the Class and Subclass members is unknown to Plaintiff at this time, such information can be ascertained through discovery from records maintained by Defendants.

46. There is a well-defined community of interest among the members of the Class and Subclass because common questions of law and fact predominate, Plaintiff's claims are typical of the members of the Class, and Plaintiff can fairly and adequately represent the interests of the Class.

47. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class and Subclass are:

   a. Whether Plaintiff and the Class and Subclass had their private and confidential information shared through a publicly accessible URL since January 1, 2003;

**Class Action Complaint for Damages**

b. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure as required by Cal. Civ. Code § 1798.81.5(b);

c. Whether Plaintiff and the Class and Subclass are entitled to damages under Cal. Civ. Code § 1798.84(b); and

d. Whether Defendants' claims and representations, as alleged herein, are untrue, misleading, and/or reasonably likely to deceive the average consumer;

e. Whether Defendants' conduct violates California Civil Code §§ 1750, *et seq*.;

f. Whether Defendants' advertising is false, untrue, or misleading within the meaning of California Business & Professions Code §§ 17500, *et seq*.;

g. Whether Defendants' conduct is an unfair, fraudulent, or unlawful act or practice within the meaning of California Business & Professions Code §§ 17200, *et seq*.;

h. Whether Defendants' advertising is unfair, deceptive, untrue or misleading within the meaning of California Business & Professions Code §§ 17200, *et seq*.;

i. Whether Defendants acted negligently or intentionally in making the misrepresentations alleged herein;

j. Whether Defendant, through its conduct, received money that, in equity and good conscience, belongs to Plaintiff and members of the Class;

k. Whether Plaintiff and the putative Class and Subclass members are entitled to equitable relief, including but not limited to restitution and/or disgorgement of ill-gotten gains; and

**Class Action Complaint for Damages**

l. Whether Plaintiff and the putative Class and Subclass members are entitled to injunctive relief as sought herein.

48. Plaintiff's claims are typical of those of the other Class and Subclass members because Plaintiff, like every other Class and Subclass member, provided PII for similar purposes and had her PII exposed through URLs that First American created. Similarly, First American misled Plaintiff, like every other Class and Subclass member, through the same or substantially similar misrepresentations that it would maintain reasonable data security.

49. Plaintiff will fairly and adequately protect the interests of the Class and Subclass. Moreover, Plaintiff has no interest that is contrary to or in conflict with those of the Class and Subclass they seek to represent during the Class and Subclass Period.

50. In addition, Plaintiff has retained competent counsel experienced in Class and Subclass action litigation to further ensure such protection and intend to prosecute this action vigorously.

51. The prosecution of separate actions by individual members of the Class and Subclass would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the Defendants in the State of California and would lead to repetitious trials of the numerous common questions of fact and law in the State of California. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a Class and Subclass action.  As a result, a Class and Subclass action is superior to other available methods for the fair and efficient adjudication of this controversy.

52. Proper and sufficient notice of this action may be provided to the Class and Subclass members through direct mail and email.

53. Moreover, the Class and Subclass members' individual damages are insufficient to justify the cost of litigation, so that in the absence of Class and Subclass

11

**Class Action Complaint for Damages**

treatment, Defendants' violations of law inflicting substantial damages in the aggregate would not be remedied without certification of the Class.

54. Absent certification of this action as a Class and Subclass action, Plaintiff and the members of the Class and Subclass will continue to be damaged by the unauthorized release of their individual identifiable information.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Violations of California Civil Code §§ 1798.80, *Et Seq*.**

55. Plaintiff incorporates by reference all of the above paragraphs of this complaint as if fully stated herein.

56. Defendants are "businesses" within the meaning of Cal. Civil Code § 1798.80(a).

57. The documentation that Defendants made available through the internet was personal information relating to Defendants' internal customer account or for the purpose of using that information in transactions relating to Plaintiff's and the Class' accounts, such as documentation regarding wire transfers relating to a real estate transaction. Therefore, the information that Defendants "owned" or "licensed" the information that it made available through online URLs as defined by Cal. Civil Code § 1798.81.5(a)(2).

58. Other documentation of Plaintiff and Class and Subclass members that Defendants made available online were, among other things, imaged driver's licenses produced in the process of Defendants' services. Such information constitutes information that Defendants "maintain" as defined by Cal. Civil Code § 1798.81.5(a)(2).

59. All of this information that Defendants own, license, or maintain constitutes "personal information" as defined by 1798.80(e) and 1798.81.5(d), as it contained each Plaintiff's and Class and Subclass members' name, signature, Social Security number, address, telephone number, driver's license or state

12

identification card number, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, or any other financial information.

60. Plaintiff and Class and Subclass members are natural persons that provided personal information to Defendants for its title insurance and closing services, and are therefore "Customers" as defined by Cal. Civil Code § 1798.80(c).

61. The breach of the personal information of thousands of Defendants' current and former customers was a "breach of the security system" of Defendants as defined by Civil Code section 1798.82(g).

62. By failing to implement reasonable security measures appropriate to the nature of the personal information of its current and former customers as described above, Defendants violated Civil Code section 1798.81.5.

63. In addition, by failing to immediately notify all affected current and former customers that their personal information had been acquired (or was reasonably believed to have been acquired) by unauthorized persons in the Data Breach, Defendants violated Civil Code section 1798.82 of the same title.

64. Defendants' failure to immediately notify its customers of the breach caused Plaintiff and Class and Subclass members to suffer damages because they have lost the opportunity to immediately: (i) buy identity protection, monitoring, and recovery services; (ii) flag asset, credit, and tax accounts for fraud, including reporting the theft of their Social Security numbers to financial institutions, credit agencies, and the Internal Revenue Service; (iii) purchase or otherwise obtain credit reports; (iv) monitor credit, financial, utility, explanation of benefits, and other account statements on a monthly basis for unrecognized credit inquiries, Social Security numbers, home addresses, charges, and/or medical services; (v) place and renew credit fraud alerts on a quarterly basis; (vi) routinely monitor public records, loan data, or criminal records; (vii) contest fraudulent charges and other forms of criminal, financial and medical identity theft, and repair damage to

13

credit and other financial accounts; and (viii) take other steps to protect themselves and recover from identity theft and fraud, such as buying identity theft insurance, which is an out-of-pocket cost.

65.   As First American violated Civil Code sections 1798.81.5 and 1798.82, First American "may be enjoined" under Civil Code section 1798.84(e).

66.   Plaintiff requests that the Court enter an injunction requiring Defendants to implement and maintain reasonable security procedures to protect its customers' personal information, including, but not limited to, ordering that Defendant: (1) engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing consistent with prudent industry practices, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis; (2) engage third-party security auditors and internal personnel to run automated security monitoring consistent with prudent industry practices; (3) audit, test, and train its security personnel regarding any new or modified procedures; (4) purge, delete and destroy, in a secure manner, employee data not necessary for its business operations; (5) conduct regular database scanning and securing checks consistent with prudent industry practices; (6) periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach consistent with prudent industry practices; (7) receive periodic compliance audits by a third party regarding the security of the computer systems Defendants use to store the personal information of its current and former employees; (8) meaningfully educate its current and former employees about the threats they face as a result of the loss of their PII to third parties, as well as the steps they must take to protect themselves; and (9) provide ongoing identity theft protection, monitoring, and recovery services to Plaintiff and Class and Subclass members.

67.   Plaintiff further requests that the Court order Defendants to (1) identify and notify all members of the Class and Subclass who have not yet been informed of the

Data Breach; and (2) notify affected current and former employees of any future data breaches by email within 24 hours of Defendants' discovery of a breach or possible breach and by mail within 72 hours.

68. As a result of Defendants' violations of Civil Code §§ 1798.81.5 and 1798.82, Plaintiff and members of the Class and Subclass have incurred and will incur damages, including but not necessarily limited to: (1) the loss of the opportunity to control how their PII is used; (2) the compromise, publication, and/or theft of their PII and the PII of their family members; (3) out-of-pocket costs associated with the prevention, detection, insurance, and recovery from identity theft and/or unauthorized use of financial and medical accounts; (4) lost opportunity costs associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity and health care/medical data misuse; (5) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets; (6) unauthorized use of compromised PII to open new financial and/or health care or medical accounts; (7) tax fraud and/or other unauthorized charges to financial, health care or medical accounts and associated lack of access to funds while proper information is confirmed and corrected; (8) the continued risk to their PII, which remain in Defendants' possession and are subject to further breaches so long as Defendants fail to undertake appropriate and adequate measures to protect the PII in its possession; and (9) future costs in terms of time, effort and money that will be expended, to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of the Class and Subclass members.

69. Plaintiff seeks all remedies available under Civil Code section 1798.84, including actual and statutory damages, equitable relief, and reasonable attorneys' fees.

**Class Action Complaint for Damages**

Plaintiff also seeks reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23; California Code of Civil Procedure § 1021.5; and Catalyst Theory.

### SECOND CAUSE OF ACTION

### Violations of California's False Advertising Law ("FAL"),

### Bus. & Prof. Code §§ 17500, *et seq.*

70. Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

71. Plaintiff and Defendants are all "person[s]" as defined by California Business & Professions Code § 17506.

72. California Business & Professions Code § 17535 authorizes a private right of action on both an individual and representative basis.

73. As mentioned above, Defendants state that its services are secure, or some variation of this, when, in fact, Defendants did not perform basic security tests, which if it had, would have revealed a vulnerability in its security that has existed for at least 16 years.

74. These misrepresentations, acts, and non-disclosures by Defendants constitute false and misleading advertising in violation of Business & Professions Code §§ 17500, *et seq*.

75. At all times relevant, Defendants' advertising and promotion of its services was, and is, untrue, misleading, and likely to deceive the reasonable consumer and the public. In fact, Defendants did deceive Plaintiff and the putative Class and Subclass members through its misrepresentations.

76. Defendants engaged in the false and/or misleading advertising and marketing of its services, as alleged herein, with the intent to directly or indirectly induce consumers to purchase its services, which Defendants knew, or had reason to know, did not contain the advertised benefits and strengths.

**Class Action Complaint for Damages**

77. As Defendants knew or should have known that the representations and/or omissions alleged herein were untrue or misleading, Defendants acted in violation of California Business & Professions Code §§ 17500, *et seq*.

78. Had Defendants truthfully advertised that its service as being unsecure as to make its consumers' data vulnerable to being captured by third parties, Plaintiff and the putative Class and Subclass members would not have purchased the service, would have paid less for the service, or would have purchased a different service from another manufacturer.

79. This false and misleading advertising of the service by Defendants present a continuing threat to consumers, as such conduct is ongoing to this day.

80. As a direct and proximate result of the aforementioned acts and omissions by Defendant, Defendants received and continues to hold monies rightfully belonging to Plaintiff and the putative Class and Subclass members, who were led to purchase Defendants' Product during the Class and Subclass Period.

## THIRD CAUSE OF ACTION

### Violations of California's Unfair Competition Law ("UCL"), BUS. & PROF. CODE §§ 17200, *ET SEQ*.

81. Plaintiff re-allege and incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

82. Plaintiff and Defendants are each a "person" as defined by California Business & Professions Code § 17201. California Business & Professions Code § 17204 authorizes a private right of action on both an individual and representative basis.

83. "Unfair competition" is defined by Business and Professions Code § 17200 as encompassing several types of business "wrongs," including: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading

advertising." The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

84. By and through Defendants' conduct alleged in further detail above and herein, Defendants engaged in conduct which constitutes unlawful, unfair, and/or fraudulent business practices, and unfair, deceptive, untrue or misleading advertising, as prohibited by California's UCL.

### A. "UNLAWFUL" PRONG

85. Beginning in 2003, Defendants have committed acts of unfair competition, including those described above, by engaging in a pattern of "unlawful" business practices, within the meaning of Bus. & Prof. Code §§ 17200 *et seq.*, by not implement and maintain reasonable security procedures or providing notice after a security breach as required by Cal. Civ. Code § 1798.80, *et seq.*

86. Similarly, Defendants' marketing, manufacturing, and distributing Defendants' services in violation of California's Consumers Legal Remedies Act, Civil Code § 1759, *et seq.* and California's False Advertising Law, Business & Professions Code §§ 17500, *et seq.*, as alleged herein.

87. Defendants violated the above-referenced statutes by falsely representing its service as being secure, when it in fact was not.

88. By advertising, promoting, manufacturing, and selling its services in violation of those California laws, Defendants engaged in a pattern of "unlawful" business practices within the meaning of California's UCL.

### B. "UNFAIR" PRONG

89. Beginning in 2003, Defendants committed acts of unfair competition as prohibited by Bus. & Prof. Code §§ 17200, *et seq.*

90. Had Plaintiff and the putative Class and Subclass members been informed that Defendants' services actually would place Plaintiff's and the putative Class and Subclass members' personal information on the publicly accessible web, they

**Class Action Complaint for Damages**

1   would not have purchased the service, would have paid less for it, or would have
2   purchased a different product.

3   91.   In other words, Defendants earned the business of Plaintiff and the putative Class
4   and Subclass members by using deceptive advertising, which placed competitors
5   that had spent money on cyber security at a disadvantage.

6   ### C. "FRAUDULENT" PRONG

7   92.   Beginning in approximately 2003, Defendants engaged in acts of unfair
8   competition, including those described above and herein, in violation of Bus. &
9   Prof. Code §§ 17200, *et seq.*, by engaging in a pattern of "fraudulent" business
10   practices within the meaning of Bus. & Prof. Code §§ 17200, *et seq.*, by falsely
11   advertising its services as secure, when, in fact, the services were not secure as
12   explained above.

13   93.   Plaintiff reserves the right to allege further conduct that constitutes other
14   fraudulent business acts or practices.

15   ### D. "UNFAIR, DECEPTIVE, UNTRUE OR MISLEADING ADVERTISING" PRONG

16   94.   Defendants' advertising is unfair, deceptive, untrue, and/or misleading within the
17   meaning of Bus. & Prof. Code §§ 17200, *et seq.*, in that consumers were led to
18   believe that Defendants' service was secure, when it was not. As a consequence
19   of this, the service would need to be supplemented with other products to make
20   the complete proteins needed for the benefits advertised.

21   95.   Plaintiff and other such reasonable consumers were likely to be, and were in fact,
22   deceived and misled by Defendants' advertising of its Product, as containing a
23   specific amount of daily value of protein.

24   96.   As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent
25   conduct described herein, Defendants received and continues to receive an unfair
26   competitive advantage and unearned commercial benefits at the expense of its
27   competitors and the public, who unwittingly provided money to Defendants based
28   on Defendants' misleading representations.

19

**Class Action Complaint for Damages**

97.  Plaintiff and the putative Class and Subclass members suffered an injury in fact because Plaintiff's money was taken by Defendants as a result of Defendants' false representations as set forth on its website.

98.  Such acts and omissions by Defendants are unlawful and/or unfair and/or fraudulent, and constitute multiple violations of California's UCL.

99.  Plaintiff reserves the right to identify additional violations by Defendants as may be established through discovery.

100.  In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiff seeks the recovery of attorneys' fees, which reward is available to a prevailing Plaintiff in a Class and Subclass action such as this.

### FOURTH CAUSE OF ACTION
### Breach of Contract

101.  Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

102.  Plaintiff and Class and Subclass members entered into a contract with Defendants for the Defendants to provide title insurance or other closing services.

103.  Defendants included its privacy policy into the contract.

104.  Plaintiff and Class and Subclass members performed substantially all that was that was required under the contract with Defendant, or were excused from doing so.

105.  Defendants failed to perform its obligations under the contract, including by failing to provide adequate privacy, security, and confidentiality safeguards for Plaintiff's and Class and Subclass members' information and documents. Defendants therefore breached the contract.

106.  As a direct and proximate result of Defendants' breach of contract, Plaintiff and Class and Subclass members did not receive the full benefit of the bargain.

**Class Action Complaint for Damages**

Instead, Plaintiff and Class and Subclass members received services that were less valuable than described in the contracts.

107. Plaintiff and Class and Subclass members were damaged in an amount at least equal to the difference in value between Defendants' services with security and Defendants' actual insecure services.

108. As described in detail above, Plaintiff and Class and Subclass members have suffered actual damages resulting from Defendants' exposure of their personal information. Moreover, said injury is continuing into the future.

109. Accordingly, Plaintiff and Class and Subclass members have been injured by Defendants' breach of contract and are entitled to damages and/or restitution, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### NEGLIGENCE

110. Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

111. In collecting the financial and other personal information of its customers, First American undertook and owed Plaintiff and Class and Subclass members a duty to exercise reasonable care in safeguarding and protecting that information. This duty included, maintaining and testing First American's security systems and taking other reasonable security measures to protect and adequately secure the PII of Plaintiff and Class and Subclass members from unauthorized access. Moreover, First American was under the duty to timely notify its former and current consumers that their information may have been accessed.

112. First American owed a duty of care to Plaintiff and Class and Subclass members because they were foreseeable and probable victims of any inadequate security practices. It was foreseeable that if First American did not take reasonable security

**Class Action Complaint for Damages**

measures, the PII of Plaintiff and members of the Class and Subclass would be stolen.

113.  Major corporations like First American face a higher threat of security breaches than smaller companies due in part to the large amounts of data they possess and First American knew or should have known its security systems were inadequate. Yet First American failed to take reasonable precautions to safeguard the Plaintiff's and the Class and Subclass members' PII. Even worse, up to the filing of this complaint Plaintiff have not be provided notice that their information may have been accessed by third parties. Therefore, First American breached the duties it owed to its current and former customers.

114.  Under Cal. Civ. Code §§ 1798.80, *et seq*, First American was under a statutory duty to protect its customer's information and to notify their customers if this information was compromised. Despite this, First American had below average cyber security and it still has not provided any customers with notice of the data compromise. Therefore, First American is negligent per se.

115.  There is a very close connection between First American's failure to employ reasonable security protections of its current and former customers' PII and the injuries suffered by Plaintiff and Class and Subclass members. When individuals' PII is exposed as occurred here, they are at risk for identity theft and need to preventative measures.

116.  But for First American's failure to implement and maintain adequate security measures to protect its customers' PII and failure to monitor its systems to identify suspicious activity, the PII of Plaintiff and Class and Subclass members would not have been at risk of theft or stolen, Plaintiff and Class and Subclass members would not have been injured, and Plaintiff and Class and Subclass members would not be at a heightened risk of identity theft in the future.

117.  First American has admitted that its current and former customers PII was exposed as a result of their system. As a result of First American's negligence,

22

Plaintiff and members of the Class and Subclass have suffered and will suffer injury, including but not necessarily limited to those listed above.

118. Plaintiff and the Class and Subclass are also entitled to damages and reasonable attorneys' fees and costs. Plaintiff also seeks reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23; California Code of Civil Procedure § 1021.5; and Catalyst Theory.

119. First American's extensive advertising on the security of its systems shows that First American understood the value this creates for a consumer. However, First American was not running even the most basic of security tests.

120. Even after an individual named Ben Shoval notified First American of the hole within its security, First American provided no response. Such actions demonstrate that First American acted with a conscious and deliberate disregard of the interests of others such that its conduct may be called willful or wanton. Consequently, Plaintiff are also entitled to punitive damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendant:

- That the Court determine that this action may be maintained as a Class and Subclass Action by certifying this case as a Class and Subclass Action as to the Class;

- That the Court appoint Plaintiff to serve as the Class and Subclass Representatives in this matter and appoint Plaintiff's Counsel as Class and Subclass Counsel;

- That Plaintiff and the Class and Subclass be awarded prejudgment interest, reasonable attorneys' fees, and costs of suit pursuant to Code of Civil Procedure § 1021.5 and California Civil Code § 1780, and/or any other applicable law;

**Class Action Complaint for Damages**

- That First American's wrongful conduct alleged herein be adjudged and decreed to violate the statutes and laws asserted herein;
- That Plaintiff and the Class and Subclass be awarded injunctive relief prohibiting such conduct in the future;

**For The First Cause of Action**

**Violations of California Civil Code §§ 1798.80, *et seq*.**

121. Costs of Suit;

122. An award of actual damages according to proof per violation to each of the named Plaintiff individually and to each member of the Class and Subclass pursuant to Cal. Civ. Code § 1798.84(b); and

123. Any and all further relief that this Court deems just and proper.

**For The Second Cause of Action**

**Violations of Cal. Bus. & Prof. Code §§ 17500, *et seq*.**

124. Costs of Suit;

125. Restitution and injunctive relief pursuant to Bus. & Prof. Code § 17203; and

126. recovery of reasonably attorney's fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5; and,

127. Any and all further relief that this Court deems just and proper.

**For The Third Cause of Action**

**Violations of Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

128. Costs of Suit;

129. Restitution and injunctive relief pursuant to Bus. & Prof. Code § 17535; and

130. Recovery of reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5; and

131. Any and all further relief that this Court deems just and proper.

///

///

///

**Class Action Complaint for Damages**

## For The Fourth Cause of Action

## Breach of Contract

132. Costs of Suit;

133. Actual damages as a result of the breach of contract;

134. Restitution from Defendants' unjust enrichment; and

135. Recovery of reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5; and

136. Any and all further relief that this Court deems just and proper.

## For The Fifth Cause of Action

## Negligence

137. Costs of Suit;

138. Actual damages;

139. Punitive damages;

140. Recovery of reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5; and

141. Any and all further relief that this Court deems just and proper.

## TRIAL BY JURY

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury on all counts so triable.

Date: June 11, 2019                         LAW OFFICES OF DANIEL G. SHAY

By:  s/ Daniel G. Shay
Daniel G. Shay
DanShay@TCPAFDCPA.com
2221 Camino Del Rio South, Suite 308
San Diego, CA  92108
Telephone: (619) 222-7429
Facsimile:  (866) 431-3292

**Class Action Complaint for Damages**